**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD D. MILLER (2009-0034790), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-CV-5906 |
| | ) | |
| ALEX HOTZA AND MICHAEL ACEVEDO, | ) | Judge Ronald A Guzman |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Richard D. Miller, a Cook County Jail inmate, has brought a civil rights suit pursuant to 42 U.S.C. § 1983 against defendants Alex Hotza and Michael Acevedo. Pending before the Court is defendants' joint motion for summary judgment. (Dkt. No. 71).

I.    **Background**

The following facts are taken from the record and presented in the light most favorable to plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1173 n.1 (7th Cir. 2013).

Plaintiff claims that on April 7, 2011, defendant Cook County correctional officer Hotza spoke to him regarding a grievance plaintiff had submitted a few days earlier to the jail administration. (Dkt. No. 72-5 at 18-19, 21). The grievance asserted that Hotza had been accepting items purchased at the jail commissary from other inmates in exchange for allowing the inmates to spend unauthorized time outside of their cells. (*Id.* at 21-22).

Following the conversation, plaintiff claims that Hotza viewed his criminal history on a nearby computer, and determined that plaintiff was detained at the jail on a predatory criminal sexual assault charge. (Dkt. No. 72 at 1; 72-5 at 23). At that moment, plaintiff was located in the day room in his portion of the jail. (*Id*. at 72-5 at 24). There is a separated officer area referred to as "the bubble" a few feet from the day room. (*Id*. at 24-25). Plaintiff states he could see into the bubble area and view the information that Hotza was accessing on the computer. (*Id*. at 24). He saw his picture and background information, including the charge, appear on the computer screen while Hotza was accessing it immediately after their conversation about the commissary grievance. (*Id*.). Plaintiff then asked Hotza about his picture appearing on the computer. (*Id*. at 26). Hotza allegedly did not respond, but instead gave plaintiff a smirk and walked away. (*Id*. at 27).

Plaintiff believes that Hotza told his fellow inmates about his sexual assault charge. He provides a hearsay claim that a fellow inmate Rashon Coleman told him of Coleman's conversation with Hotza. (*Id*. at 72-5 at 28). Plaintiff also claims that this is Hotza's "MO" (presumably his modus operandi), and suggests Hotza has done this before but does not present any personal knowledge (or other competent evidence) of any prior incidents. (*Id*. at 27).

Despite not witnessing Hotza speaking directly to the inmates in his area of the jail, the inmates allegedly learned about plaintiff's sexual assault charge within a few minutes of Hotza accessing the information on the computer. (*Id*. at 29-30). Plaintiff's charge displeased his fellow inmates, who told him that he had to leave

their area of the jail. (*Id*. at 30). The fellow inmates also threatened plaintiff with harm if he did not relocate immediately. (*Id*. at 31).

Plaintiff claims that he wrote a second grievance regarding Hotza giving out his sexual assault charge information to other inmates and also spoke to a supervisor a few days later. (*Id*. at 33). Plaintiff was relocated to a different part of the jail approximately a week after his interaction with Hotza and threats from fellow inmates. (*Id*. at 37).

Plaintiff was in this new portion of the jail for a day or two when Officer Hotza came to this area and again disclosed the sexual assault charge to the inmates located there. (*Id*. at 38-40). Again, there is no evidence that plaintiff witnessed any conversation between the inmates and Hotza. But following the pattern, plaintiff was once again told by the inmates that he needed to move from their portion of the jail because they did not want a sex offender among them just minutes after Hotza appeared. (*Id*. at 40). Plaintiff again spoke to a supervisor and was transferred to a third part of the jail. (*Id*. at 41-43).

Plaintiff was in this third part of the jail for approximately a week when Hotza again appeared and allegedly informed the inmates of plaintiff's sexual assault charge. (*Id*. at 44-47). (This third incident follows the same pattern of plaintiff lacking personal knowledge that Hotza spoke directly to the inmates, but the inmates knowing about his charge within minutes of Hotza appearing). This third group of inmates immediately confronted plaintiff about the sexual assault charge, and this time also said that he was a "snitch." (*Id*. at 48).

A day later, on May 11, 2011, prior to plaintiff being able to be relocated, the inmates again confronted him about the sexual assault charge and snitch issue. (*Id*. at 51). Plaintiff went to speak to defendant Officer Acevedo, the officer supervising that area of the jail at that time. (*Id*.). Acevedo was located in the bubble area while plaintiff was a few feet away in the dayroom. (*Id*. at 52).

Plaintiff first told Acevedo that he wanted to speak to a sergeant. (*Id*.). Acevedo made a call for a supervisor on the telephone. (*Id*.). Plaintiff did not say anything additional to Acevedo, and went to sit at a table in the dayroom to wait for approximately fifteen minutes. (*Id*. at 52-54). Plaintiff then went back to Acevedo to check to see when the sergeant would be coming to see him. (*Id*. at 53). During this second conversation, plaintiff asked Acevedo "how long it was going [to take the sergeant] because I got to leave." (*Id*.). Plaintiff also told Acevedo that "I feel threatened for my life" but did not go into details. (*Id*.). Plaintiff did not tell Acevedo about the alleged issue of Hotza informing his fellow inmates of his sexual assault charge.

While Plaintiff was speaking to Acevedo this second time, a group of five fellow inmates attacked plaintiff. (*Id*. at 53-54, 56). The inmates punched and kicked plaintiff for approximately ten minutes. (*Id*. at 56, 58). They also struck him with a broom or mop stick, and stabbed him in the mouth with a homemade knife. (*Id*. at 57). The inmates called plaintiff a sexual predator and snitch while attacking him. (*Id*. at 59).

-4-

Officer Acevedo stayed in the bubble during the assault and it ended when a sergeant and another officer appeared, and telling the inmates to get down on the floor. (*Id*. at 60-61). Plaintiff received medical attention for his injuries, including four stitches for his mouth. (*Id*. at 62, 65).

Officer Acevedo agrees that he stayed in the bubble while the attack occurred, that multiple inmates attacked plaintiff, and that they possessed weapons, including a homemade knife. (Dkt. No. 72-2 at 2-3). He explains that he did not initially leave the bubble because to do so would have endangered his own safety as he was the only guard present at the beginning of the assault. (*Id*. at 3). Acevedo immediately reported the fight, called for backup on his radio, and entered the area when the backup arrived to help stop the fight. (*Id*.). Plaintiff provides no evidence to dispute Acevedo's version of events.

Acevedo states that plaintiff never told him of any threats from other inmates nor expressed any concerns about his safety. (*Id*. at 3). He also suggests that the attack was unanticipated due to the inmates' use of "poppers." A popper is a toothpaste cap that is jammed in the door lock. (Dkt. No. 72-5 at 71). Using it gives the impression that the door is closed and locked when in reality the inmate can open the door. (*Id*.). Plaintiff and Acevedo agree that the inmates were able to use the poppers to leave their cells and get the drop on plaintiff.

Acevedo states that he no knowledge of any grievance by plaintiff against Hotza, did not speak to Hotza about plaintiff before the incident, had no knowledge of plaintiff's pending charge, and that plaintiff never asked to speak to a sergeant.

(Dkt. No. 72-2 at 3-4). Acevedo claims that he no knowledge of any threat to plaintiff's safety prior to the incident, and would have immediately contacted a supervisor if he had any concern. (*Id*. at 3). Officer Hotza denies plaintiff's allegations against him, claims that he never spoke to any inmates about plaintiff, and did not know of any grievance filed by plaintiff involving him until he was sued in this lawsuit. (Dkt. No. 72-3 at 2).

## II. Analysis

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to evidence demonstrating a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) (citations omitted). Presented evidence must be competent evidence that would be admissible at trial. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citations omitted). The moving party has the initial burden of showing there is no genuine dispute and he is entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). If the moving party meets this burden, the non-moving party must respond with specific facts showing that the jury could find in his favor, and that there is a genuine dispute that needs

to be adjudicated at trial. *Carmichael*, 605 F.3d at 460 (citing *Anderson*, 477 U.S. at 251-52; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wheeler*, 539 F.3d at 634). A genuine dispute is one that could change the outcome of the suit, and is supported by evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (citations omitted).

Plaintiff is proceeding with claims of First Amendment retaliation and deliberate indifferent to the known risk of assault against both defendants. The Courts grants the summary judgment motion on both claims as to defendant Acevedo, but denies the motion as to Hotza.

Regarding the retaliation claim, the First Amendment protects plaintiff's ability to "utilize available grievance procedures without threat of recrimination . . . ." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) (citing *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002)). Plaintiff has the burden to "show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and, (3) the First Amendment activity was at least a motivating factor in defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). Plaintiff easily satisfies the first two elements because the ability to bring an internal jail grievance is protected by the First Amendment,

and he provides evidence that he faced violence in response to filing the grievance. *Dobbey v. Illinois Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009).

Plaintiff demonstrates a genuine issue of material fact on the third element of a motivating factor as to Officer Hotza, but cannot meet his burden as to Officer Acevedo. Plaintiff may meet his burden by showing "a chronology of events from which retaliation could be inferred." *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) (holding that retaliation finding proper when prisoner subjected to more onerous search after making protected complaint about prior strip search).

Here, plaintiff's evidence shows that Hotza immediately retaliated against him following the grievance alleging that Hotza had improperly accepted commissary purchases from other inmates. According to plaintiff, Hotza immediately walked to the computer and accessed plaintiff's charge information after he confronted plaintiff. Although plaintiff did not witness Hotza directly inform other inmates of the charge information, a reasonable inference can be made in plaintiff's favor that Hotza provided the information because the inmates immediately knew of the information after Hotza pulled it off the computer. In addition, Hotza allegedly followed plaintiff to two other parts of the jail where plaintiff was relocated, and each time the inmates in those other parts immediately knew of the information following Hotza's appearance. Plaintiff claims he was safe until Hotza appeared. A reasonable jury viewing the evidence in plaintiff's favor could conclude that Hotza chased after plaintiff until he was assaulted by his fellow inmates to punish him for filing the original grievance. Hotza refutes all of this.

This creates a genuine issue of material fact that cannot be resolved at summary judgment.

However, as to Acevedo, plaintiff provides no evidence of a casual connection. Acevedo states that he had no idea of the grievance, plaintiff's charge or any issue between plaintiff and Hotza. Acevedo was not present when Hotza allegedly informed the inmates who later assaulted plaintiff of the sex charge and snitch issue. Instead, Acevedo was on duty the next day.

Plaintiff provides no evidence of any communication between Hotza and Acevedo at any time, and plaintiff concedes that he never spoke directly to Acevedo about the issue. He only asked Acevedo to see a sergeant / supervisor, and then said that he was in danger immediately before the assault without going into specific detail. Plaintiff's evidence does not suggest that Acevedo was involved in any way with the original grievance and Hotza's alleged retaliation.

As to the failure to protect claim, "the Due Process Clause of the Fourteenth Amendment protects pre-trial detainees from punishment and places a duty upon jail officials to protect pre-trial detainees from violence." *Fisher v. Lovejoy*, 414 F.3d 659, 661 (7th Cir. 2005) (citing *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992)). "'Prison officials have a duty to protect prisoners from violence at the hands of other prisoners.'" *Lewis v. Richards*, 107 F.3d 549, 552-53 (7th Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 831-33 (1994); *Langston v. Peters*, 100 F.3d 1235, 1237 (7th Cir. 1996) (internal quotation marks omitted)). However, not every act of inmate on inmate violence results in a constitutional violation. *Borello v. Allison*,

446 F.3d 742, 747 (7th Cir. 2006). Plaintiff must show "(1) that he suffered an objectively sufficient serious injury; and (2) that he was incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Farmer*, 511 U.S. at 834). The official is deliberately indifferent resulting in a constitutional violation only if he "'effectively condones the attack by allowing it to happen.'" *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Lewis*, 107 F.3d at 553). "[D]efendants [must have] actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from defendants' failure to prevent it." *Santiago*, 599 F.3d at 756 (quoting *Lewis*, 107 F.3d at 553). "Mere negligence or even gross negligence does not constitute deliberate indifference." *Borello*, 446 F.3d at 749.

There is no issue as to the first element of an objectively serious injury, as plaintiff was beaten for a ten minute period, including suffering a stab wound to the mouth. He required medical attention after the assault. As to the second issue, plaintiff is able to demonstrate a genuine issue of material fact as to Hotza but again fails as to Acevedo.

As to Acevedo, jailers are only responsible for protecting inmates against "known substantial risks" of assault. *Smith v. Sangamon County Sheriff Dep't.*, 715 F.3d 188, 191 (7th Cir. 2013). As mentioned above, the record shows that Acevedo did not know of the alleged issues between Hotza and plaintiff. Acevedo's only contact with plaintiff were his two statements immediately prior to the assault. The first time, plaintiff asked to see a supervisor sergeant because he "needed to

leave." He then returns a second time back fifteen minutes later to see how long it would be to see the sergeant, and made a general claim that he was in danger without providing any specific details.

A general fear of violence without providing any specific allegations regarding the threat is insufficient to put a correctional officer on notice of a known substantial risk of assault. *Klebanowski v. Sheahan*, 540 F.3d 633, 638 (7th Cir. 2008) (holding that detainee telling correctional officers that he wanted to be moved because he was in fear for his life but failing to say why he was being targeted or by whom was insufficient to establish a known substantial risk of assault). This is not the type of situation where Acevedo "knew or should have known" that plaintiff was facing an obvious risk of assault. *Santiago v. Walls*, 599 F.3d 749, 759 (7th Cir. 2010).

In addition to Acevedo not having any knowledge of the threats plaintiff was facing, the evidence indicates the surprise nature of the attack. Plaintiff concedes that the inmates used "poppers" to keep their cell doors unlocked while appearing to be locked. Plaintiff provides no evidence of Acevedo's deliberate indifference to the existence of the poppers, or their use in allowing the other inmates to get a jump on plaintiff.

As a final point, the undisputed evidence in the record shows that Acevedo was not deliberate indifferent once the attack began. "A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would

put [him] in significant jeopardy." *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (citing *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007); *Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002)).

The undisputed evidence shows that Acevedo was safely in the bubble when plaintiff was attacked by multiple inmates with weapons, including a broom stick and homemade knife. Acevedo wisely stayed in the bubble because entering into the dayroom by himself would have exposed him to unreasonable danger. He also appropriately called on the radio for backup that arrived, leading to the conclusion of the assault.

However, there is a genuine issue of material fact as to Hotza. Correctional officers cannot use inmates as weapons to attack other inmates. *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002). Yet this is what plaintiff's evidence suggests. Hotza allegedly followed plaintiff around the jail and sought out other inmates who then immediately claimed that plaintiff was charged with a sex crime and was a snitch. Plaintiff's evidence shows that Hotza allegedly unleashed the inmates who attacked plaintiff. This is sufficient to survive summary judgment.

Hotza responds that plaintiff cannot proceed with his claim because plaintiff failed to properly exhaust his claims through the internal jail grievance process. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this [T]itle, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §

1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). A prisoner is required to utilize a jail grievance system before filing a Section 1983 claim so that the jail officials have an opportunity to take a corrective action to remedy the problem and be aware of alleged ongoing problems. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Dole*, 438 F.3d at 809; *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999). "Exhaustion is an affirmative defense, and the burden of proof is on the defendants." *Dole*, 438 F.3d at 809 (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

Hotza includes two grievances in the record, but claims that both fail to satisfy the administrative exhaustion requirement. (Dkt. No 72-4 at 12-15). His arguments are incorrect. The June 6, 2011 grievance properly exhausts all of plaintiff claims against Hotza.

Hotza argues that this grievance is untimely. Cook County policy requires that a grievance is filed within 15 days after the alleged incident occurred. (Dkt. No. 72-4 at 6). A grievance may be rejected if plaintiff fails to file his complaint and required appeal in the proper place, correct time, and in accordance with all jail rules. *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005). But, if the jail accepts the otherwise improper filing and does not enforce the procedural rule but instead reaches the merits, there is no default by the detainee. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). That is what happened here. The jail officials who processed the original grievance and appeal did not raise the alleged untimeliness of the petition and reached the merits of the complaint. (Dkt. No. 72-4 at 10).

Furthermore, the merits of the grievance raise plaintiff's case in full to jail officials. The grievance mirrors the present case by mentioning the original grievance on the commissary issue, Hotza looking up plaintiff's charge information, informing other inmates, and placing him in danger in retaliation. The grievance informed jail officials of plaintiff's case, thereby satisfying the PLRA exhaustion requirement.[1]

## III.   CONCLUSION

Defendants' motion for summary judgment (Dkt. No. 71), is granted as to defendant Acevedo, and denied as to defendant Hotza. Defendant Acevedo is dismissed. Plaintiff's motion for summary judgment (Dkt. No. 77), which was actually a response to defendants' summary judgment motion, is terminated. The case is set for status on August 5, 2013, at 10:15 a.m. Defense counsel is instructed to make arrangements for plaintiff to appear via telephone at the status. The remaining parties are strongly encouraged to exhaust all settlement possibilities prior to the status conference.

ENTER:

Dated: July 17, 2013

_____
RONALD A. GUZMAN
UNITED STATES DISTRICT JUDGE

---

[1]  Defendants also argue that plaintiff failed to comply with Local Rule 56.1 at times, and failed to develop proper arguments. The Court has reviewed the record and full and relies on properly presented arguments and evidence. Defendants' arguments on these points are rejected.

-14-